IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 19-11466 (MFW)<br><br>(Jointly Administered) |
| CENTER CITY HEALTHCARE, LLC, d/b/a HAHNEMANN UNIVERSITY HOSPITAL, PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC, ST. CHRISTOPHER'S HEALTHCARE, LLC, and SCHC PEDIATRIC ASSOCIATES, LLC,<br><br>                Plaintiffs,<br><br>v.<br><br>MEDLINE INDUSTRIES INC.,<br><br>                Defendant. | Adv. Proc. No. 21-50920 (MFW) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

        Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7056, Defendant

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

respectfully submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

1. Plaintiffs in this case are: Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("CCH"), Philadelphia Academic Health System, LLC ("PAHS"), St. Christopher's Healthcare, LLC ("SCH"), and SCHC Pediatric Associates, LLC ("SCHC" and together with CCH, PAHS, and SCH, collectively, "Plaintiffs"). (November 17, 2023 Declaration of Michael A. Kaplan ("Kaplan Decl."), Ex 1.[2])

2. Defendant is Medline Industries, Inc. ("Medline"). (*Id.*)

3. PAHS is the owner of 100% of the membership interests in and is the sole manager of CCH and SCH. (*Id.*)

4. PAHS is also the 100% owner and sole manager of Philadelphia Academic Medical Associates, LLC which is the 100% owner of the membership interests in TPS of PA, LLC which is the 100% owner of the membership interests in SCHC. (*Id.*)

5. On January 11, 2018, Plaintiff CCH became the owner and operator of Hanemann University Hospital, in Philadelphia, Pennsylvania. (*Id.*)

6. On January 11, 2018, Plaintiff SCH became the owner and operator of St. Christopher's Hospital for Children, in Philadelphia, Pennsylvania. (*Id.*)

7. Medline supplied medical supplies to Plaintiffs between, at a minimum, January 2018 through July 2019. (November 16, 2023 Declaration of Shane Reed ("Reed Decl.") ¶ 3.)

---

[2] For ease of reference, Medline has labeled its exhibits sequentially, regardless of the declaration to which they are attached.

8. On June 30, 2019, CCH, PAHS, and SCH commenced their Chapter 11 bankruptcy cases captioned above. (Kaplan Decl. Ex. 1 at 4 ¶ 7.)

9. On July 1, 2019, SCHC commenced its respective Chapter 11 bankruptcy case. (*Id*. at 4 ¶ 8.)

10. Medline has no existing claim (allowed, disallowed, or otherwise) filed in connection with the above captioned Chapter 11 bankruptcy case. (Reed Decl. ¶ 17.)

11. On June 25, 2021, Plaintiffs initiated the above-captioned adversary proceeding against Medline. (*See generally* Kaplan Decl. Ex. 1.)

12. Plaintiffs' initial complaint seeks to recover the payments they made ("Alleged Preferential Transfers")—listed on Exhibit A to the initial complaint—pursuant to invoices from Medline which are also listed on Exhibit A to the initial complaint. (*Id*.)

13. The first payment Plaintiffs seek to recover in their initial complaint was made by wire, dated April 10, 2019, with a wire number of FED#0410I1B7031R014111 in the amount of $400,000 dollars ("First Payment"). (November 17, 2023 Declaration of Vincenzo Toppi ("Toppi Decl."), ¶ 5, Ex. 6 at 3.).

14. The invoices the First Payment paid are listed immediately below the First Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*See id*.)

15. The second payment Plaintiffs seek to recover in their initial complaint was made by wire, dated April 16, 2019, with a wire number of FED#0416I1B7033R010246 in the amount of $86,555 ("Second Payment"). (*Id*. at 7.)

16. The invoices the Second Payment paid are listed immediately below the Second Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id.*)

17. The third payment Plaintiffs seek to recover in their initial complaint was made by wire, dated April 19, 2019, with a wire number of FED#0419I1B7033R005971 in the amount of $150,000 ("Third Payment"). (*Id.* at 8.)

18. The invoices the Third Payment paid are listed immediately below the Third Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id.*)

19. The fourth payment Plaintiffs seek to recover in their initial complaint was made by wire, dated April 22, 2019, with a wire number of TRN#190422129809 in the amount of $349,011 ("Fourth Payment"). (*Id.* at 9.)

20. The invoices the Fourth Payment paid are listed immediately below the Fourth Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id.*)

21. The fifth payment Plaintiffs seek to recover in their initial complaint was made by wire, dated April 30, 2019, with a wire number of FED#0430I1B7033R022519 in the amount of $562,970 ("Fifth Payment"). (*Id.* at 12.)

22. The invoices the Fifth Payment paid are listed immediately below the Fifth Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id.*)

23. The sixth payment Plaintiffs seek to recover in their initial complaint was made by check, dated May 10, 2019, with a check number of 34156 in the amount of $532,636 ("Sixth Payment"). (*Id.* at 17.)

24. The invoices the Sixth Payment paid are listed immediately below the Sixth Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id*.)

25. The seventh payment Plaintiffs seek to recover in their initial complaint was made by check, dated May 15, 2019, with a check number of 34625 in the amount of $350,707 ("Seventh Payment"). (*Id*. at 22.)

26. The invoices the Seventh Payment paid are listed immediately below the Seventh Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id*.)

27. The eighth payment Plaintiffs seek to recover in their initial complaint was made by check, dated May 24, 2019, with a check number of 34909 in the amount of $462,232 ("Eighth Payment"). (*Id*. at 25.)

28. The invoices the Eight Payment paid are listed immediately below the Eighth Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id*.)

29. The ninth payment Plaintiffs seek to recover in their initial complaint was made by check, dated May 30, 2019, with a check number of 35077 in the amount of $415,203 ("Ninth Payment"). (*Id*. at 29.)

30. The invoices the Ninth Payment paid are listed immediately below the Ninth Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id*.)

31. The tenth payment Plaintiffs seek to recover in their initial complaint was made by check, dated June 6, 2019, with a check number of 35318 in the amount of $467,759 ("Tenth Payment"). (*Id*. at 33.)

32. The invoices the Tenth Payment paid are listed immediately below the Tenth Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id*.)

33. The eleventh payment Plaintiffs seek to recover in their initial complaint was made by check, dated June 12, 2019, with a check number of 35660, in the amount of $414,106 ("Eleventh Payment"). (*Id*. at 36.)

34. The invoices the Eleventh Payment paid are listed immediately below the Eleventh Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id*.)

35. The twelfth payment Plaintiffs seek to recover in the initial complaint was made by wire, dated June 27, 2019, with a wire number of FED#0627I1B7031R018220 in the amount of $201,846 ("Twelfth Payment"). (*Id*. at 39.)

36. The invoices the Twelfth Payment paid are listed immediately below the Twelfth Payment on the Medline Industries Inc. Statement of Account attached to Plaintiffs' initial complaint. (*Id*.)

37. With respect to the First Payment, the range of days outstanding or days to payment is 102 to 292 days with a mean of 120.8 days. (Toppi Decl. ¶ 6.)

38. With respect to the Second Payment, the range of days outstanding or days to payment is 102 to 108 days with a mean of 103.9 days. (*Id*. ¶ 7.)

39. With respect to the Third Payment, the range of days outstanding or days to payment is 100 to 105 days with a mean of 102.1 days. (*Id*. ¶ 8.)

40. With respect to the Fourth Payment, the range of days outstanding or days to payment is 96 to 103 days with a mean of 99.6 days. (*Id*. ¶ 9.)

41. With respect to the Fifth Payment, the range of days outstanding or days to payment is 88 to 104 days with a mean of 96.1 days. (*Id.* ¶ 10.)

42. With respect to the Sixth Payment, the range of days outstanding or days to payment is 84 to 98 days with a mean of 90.1 days. (*Id.* ¶ 11.)

43. With respect to the Seventh Payment, the range of days outstanding or days to payment is 81 to 89 days with a mean of 84.5 days. (*Id.* ¶ 12.)

44. With respect to the Eight Payment, the range of days outstanding or days to payment is 76 to 90 days with a mean of 81.8 days. (*Id.* ¶ 13.)

45. With respect to the Ninth Payment, the range of days outstanding or days to payment is 70 to 82 days with a mean of 75.7 days. (*Id.* ¶ 14.)

46. With respect to the Tenth Payment, the range of days outstanding or days to payment is 65 to 77 days with a mean of 71.3 days. (*Id.* ¶ 15.)

47. With respect to the Eleventh Payment, the range of days outstanding or days to payment 54 to 71 days with a mean of 62.9 days. (*Id.* ¶ 16.)

48. With respect to the Twelfth Payment, the range of days outstanding or days to payment is 61 to 69 days with a mean of 64.3 days. (*Id.* ¶ 17.)

49. As discussed above, Medline supplied medical and hospital supplies and equipment to the Plaintiffs. (Reed Declaration ¶ 3.)

50. In terms of its size as a company, Medline has more than $100,000,000 in assets and $25,000,0000 in annual sales. (*Id.* ¶ 12.)

51. The Risk Management Association ("RMA") aggregates data from anonymized financial statements of businesses. (*Id.* ¶ 8.)

52. Professionals in the medical and hospital goods and supplies industry rely on RMA data to, among other things, understand "market" contractual terms in negotiating a supply relationship. (*Id*. ¶¶ 5-7.)

53. Based on the data it collects, RMA reports on invoicing and payment practices for certain industries. (*Id*. ¶¶ 8-9.)

54. With respect to the relationship between Medline and the Plaintiffs, the relevant RMA industry is the "Medical, Dental, and Hospital Equipment and Supplies Merchant Wholesalers" industry, which is NAIC[3] industry code 423450. (*Id*. ¶ 11.)

55. Plaintiffs' rebuttal expert witness, William Pederson, did not dispute that the "Medical, Dental, and Hospital Equipment and Supplies Merchant Wholesalers" industry, which is NAIC industry code 423450, contained the industry data relevant to Plaintiffs' and Medline's business relationship. (Kaplan Decl. ¶ 3, Ex. 3, Dep. Tr. at 113:22-114:4.)

56. For industry code 423450, RMA compiled the range of days outstanding or days to payment on invoices for 13 companies with greater than $100,000,000 in assets and greater than $25,000,000 in annual sales ("13 Companies") during the period between February 2019 and August 31, 2019 ("Industry Period"). (Reed Decl. ¶ 13, Ex. 4.)

57. Based on the RMA data for industry code 423450, the range of days outstanding or days to payment on invoices for the 13 Companies during the Industry Period was 28 to 76 days ("RMA Industry Range"). (*Id*. at Ex. 4 at 1.)

---

[3] The U.S. Department of Commerce states that "The North American Industry Classification System…was developed under the direction and guidance of the Office of Management and Budget (OMB) as the standard for use by Federal statistical agencies in classifying business establishments for the collection, tabulation, presentation, and analysis of statistical data describing the U.S. economy." (Toppi Decl. ¶ 2, n.2 (citing *North American Industry Classification System*, United States Census Bureau, www.census.gov/naics).)

58. All invoices paid by the Twelfth Payment were paid within the RMA Industry Range. (Toppi Decl. ¶ 19.)

59. All invoices paid by the Eleventh Payment were paid within the RMA Industry Range. (*Id*.)

60. A majority of invoices paid by the Tenth Payment were paid within the RMA Industry Range and, on average, invoices paid by the Tenth Payment were paid within the RMA Industry Range. (*Id*.)

61. A portion of invoices paid by the Ninth and Eighth Payments were paid within the RMA Industry Range and, on average, invoices paid by the Ninth Payment were paid within the RMA Industry Range. (*Id*.)

62. Plaintiffs' rebuttal expert witness, William Pederson, wrote: "all the invoices dated after [March 22, 2019]" were paid within the RMA Industry Range "[i]n other words, invoices closer to the start of the preference period were not within the industry standard (the $3.1m), but moved toward industry standard during the preference period." (Kaplan Decl. ¶ 3, Ex. 2 at 4.)

63. Plaintiffs' rebuttal expert witness, William Pederson, testified as follows: "Q. So based on your report, all invoices dated after [March 22, 2019] were paid within the industry range that Toppi identified [28 to 76 days], right? A. No. I don't think that's what this says. I'm sorry. Let me pause and re-read it. That's correct. It moved towards industry standard. From March 4th. And I think there is another place I can look for that. Yes. On Page-20, we have change in days-to-receipt. So in April, it's 120.8 days to pay. But as we get closer to the preference, it comes down to 64.3 days to pay." (*Id*. ¶ 4, Ex. 3, Dep. Tr. 114:16-116:22.)

64. At least, $1,297,376.50 worth of Medline invoices paid by the Alleged Preferential Transfers fall within the RMA Industry Range. (Toppi Decl. ¶ 20, Ex. 7 at 104.)

65. $3,095,648.06 worth of Medline invoices ("Other Invoices") paid by the Alleged Preferential Transfers fall outside the RMA Industry Range. (*Id.*)

66. The total amount of Other Invoices remaining after a sequential invoice-by-invoice comparison of the Other Invoices against Medline's invoices to Plaintiffs evidencing Medline's contemporaneous provision of new goods to Plaintiffs is: $0. (Toppi Decl. ¶¶ 21-22, *see* Ex. 7 at 104.)

67. To identify industry practices, Medline also evaluated its invoicing and payment practices with all customers during the preference period. (Reed Decl. ¶ 14.)

68. In May of 2019, 78.47% of Medline's invoices for goods it sold to all customers were paid between 0 and 60 days post invoice. (*Id.*)

69. In April of 2019, 78.66% of Medline's invoices for goods it sold to all customers were paid between 0 and 60 days post invoice. (*Id.*)

70. In May of 2019, 8.6% of Medline's invoices for goods it sold to all customers were paid between 61 and 90 days post invoice. (*Id.*)

71. In April of 2019, 8.57% of Medline's invoices for goods it sold to all customers were paid between 61 and 90 days post invoice. (*Id.*)

72. In May of 2019, 5.25% of Medline's invoices for goods it sold to all customers were paid between 91 and 120 days post invoice. (*Id.*)

73. In April of 2019, 5.07% of Medline's invoices for goods it sold all customers were paid between 91 and 120 days post invoice. (*Id.*)

74.   In May of 2019, 7.68% of Medline's invoices for goods it sold to all customers were paid after 120 days post invoice.  (*Id*.)

75.   In April of 2019, 7.70% of Medline's invoices for goods it sold to all customers were paid after 120 days post invoice.  (*Id*.)

76.   Only $68,943.51 worth of the invoices paid by the Alleged Preferential Transfers were paid outside a 0 to 120 day window.  (*Id*. ¶ 16; *see* Ex. 5 at 104.)

Dated:   Wilmington, Delaware
         November 17, 2023

                                               **THE ROSNER LAW GROUP LLC**

                                               By: */s/ Zhao Liu*
                                                   Frederick B. Rosner (DE 3995)
                                                   Zhao (Ruby) Liu (DE 6436)
                                                   824 Market Street, Suite 810
                                                   Wilmington, DE 19801
                                                   Tel.: (302) 777-1111
                                                   Email: rosner@teamrosner.com
                                                                liu@teamrosner.com

                                                       -and-

                                              **LOWENSTEIN SANDLER LLP**

                                               By: */s/ Robert M. Hirsh*
                                                   Robert M. Hirsh, Esq.
                                                   Bruce S. Nathan, Esq.
                                                   Phillip Khezri, Esq.
                                                   1251 Avenue of the Americas
                                                   17th Floor
                                                   New York, New York 10020
                                                   Telephone: (212) 262-6700
                                                   Facsimile:  (212) 262-7402
                                                   Email:   rhirsh@lowenstein.com
                                                                bnathan@lowenstein.com
                                                                pkhezri@lowenstein.com

                                                      -and-

                                               Michael A. Kaplan, Esq.
                                               C. Patrick Thomas, Esq.

          One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
Email:    mkaplan@lowenstein.com

*Attorneys for Defendant*