## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (MFW) |
| Debtors. | (Jointly Administered) |
| CENTER CITY HEALTHCARE, LLC, d/b/a HAHNEMANN UNIVERSITY HOSPITAL, PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC, ST. CHRISTOPHER'S HEALTHCARE, LLC, and SCHC PEDIATRIC ASSOCIATES, LLC, | Adv. Proc. No. 21-50920 (MFW) |
| Plaintiffs, | |
| v. | |
| MEDLINE INDUSTRIES INC., | |
| Defendant. | |

## REPLY BRIEF IN SUPPORT OF MEDLINE INDUSTRIES INC.'S
## MOTION FOR SUMMARY JUDGMENT

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .....................................................................................................................3

    I.      MEDLINE MET ITS BURDEN; PLAINTIFFS IGNORED THEIRS. .................3

    II.     THE COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO DISCREDIT MEDLINE'S EVIDENCE. .............................................................5

          1.     Medline's RMA Data Is Admissible And Reliable. .......................5

          2.     Plaintiffs Have No Evidence That Medline's Collection Efforts Were Extraordinary And There Is Nothing Extraordinary About The Consistent Enforcement Of A Credit Limit. ......................................................................................6

          3.     No Matter What, Evidence Regarding "Collection Conduct" Is Not Relevant To The Industry Standard. .....................................8

          4.     The Court Should Reject Plaintiffs' Experts' Declarations. ..........10

          5.     Shane Reed Can Testify About Medline's Credit Practices With Its Other Customers. .........................................................12

          6.     The Court Should Reject Plaintiffs' Bald Critiques Of Medline's Evidence. ......................................................................13

    III.    PLAINTIFFS DO NOT CONTEST MEDLINE'S OTHER ARGUMENTS FOR SUMMARY JUDGMENT.......................................................................14

        A.    Plaintiffs Do Not Raise A Genuine Dispute Over Medline's New Value Defense. ...........................................................................14

        B.    Plaintiffs Do Not Address Medline's Motion For Summary Judgment On Plaintiffs' Constructive Fraudulent Transfer Claim. ..........14

        C.    Medline Is Entitled To Summary Judgment On Plaintiffs' Third And Fourth Claims For Relief. .......................................................15

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
  561 F.3d 199 (3d Cir. 2009).........................................................................................10

*In re AES Thames, L.L.C.*,
  No. 11-10334 (KJC), 2016 WL 11595116 (Bankr. D. Del. Oct. 28, 2016) ...............3, 6, 9, 13

*In re Am. Home Mortg. Holdings, Inc.*,
  476 B.R. 124 (Bankr. D. Del. 2012) ...........................................................................3, 9

*In re Archway Cookies*,
  435 B.R. 234 (Bankr. D. Del. 2010) ...........................................................................6, 7

*In re Callier*,
  No. 22-30002, 2023 WL 6416398 (Bankr. S.D. Ga. Sept. 29, 2023).........................5

*In re Carled, Inc.*,
  91 F.3d 811 (6th Cir. 1996) .........................................................................................3, 10

*In re CL H Winddown LLC*,
  No. 21-10527 (JTD), 2023 WL 5740195 (Bankr. D. Del. Sept. 5, 2023) .............................15

*In re Conex Holdings, LLC*,
  518 B.R. 269 (Bankr. D. Del. 2014) ...........................................................................3, 9, 12

*Dietz v. Jacobs*, No. CIV. 12-1628 JNE/JJG,
  2014 WL 1153502 (D. Minn. Mar. 21, 2014) ............................................................6

*In re F-Squared Inv. Mgmt., LLC*,
  633 B.R. 663 (Bankr. D. Del. 2021) ...........................................................................4

*In re ITT Educ. Servs., Inc.*,
  No. 16-07207-JMC-7A, 2021 WL 933984 (Bankr. S.D. Ind. Mar. 11, 2021) ........................6

*Jackpocket, Inc. v. Lottomatrix NY LLC*,
  645 F. Supp. 3d 185 (S.D.N.Y. 2022).........................................................................5, 6

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
  No. CV 11-1083, 2017 WL 773880 (D.N.J. Feb. 28, 2017)......................................5

*Liptok v. Bank of Am.*,
  773 F. App'x 97 (3d Cir. 2019) ...................................................................................4

*In re Mallinckrodt PLC,*
No. 20-12522 (JTD), 2021 WL 2460227 (Bankr. D. Del. June 16, 2021) ...........................14

*In re Managed Storage Int'l, Inc.,*
No. 09-10368 (MWF), 2020 WL 1532390 (D. Del. Mar. 31, 2020)....................................6, 8

*Miller v. JNJ Logistics, LLC (In re Proliance Int'l, Inc.),*
514 B.R. 426 (Bankr. D. Del. 2014) ...................................................................................3, 13

*Miller v. Univ. of Houston - Downtown,*
No. 4:15-CV-2927, 2023 WL 6465858 (S.D. Tex. Oct. 4, 2023) ..........................................11

*Miller v. Westfield Steel, Inc. (In re Elrod Holdings Corp.),*
426 B.R. 106 (Bankr. D. Del. 2010) ...................................................................................4, 7

*In re Molded Acoustical Products Inc.,*
18 F.3d 217 (3d Cir. 1994)............................................................................................8, 9, 10

*In re Parker Sch. Uniforms, LLC,*
No. 18-10085 (CSS), 2021 WL 4553016 (Bankr. D. Del. Oct. 5, 2021) ...............................14

*Pope v. Swanson,*
No. CA 07-652-GMS, 2009 WL 2507928 (D. Del. Aug. 17, 2009) .......................................14

*In re Powerwave Techs., Inc.,*
No. 13-10134 (MFW), 2017 WL 1373252 (Bankr. D. Del. Apr. 13, 2017).........................3, 4

*Reddy v. Patel,*
No. 2:16-CV-08256, 2023 WL 2770477 (D.N.J. Apr. 4, 2023)...............................................4

*In re Sierra Concrete Design, Inc.,*
463 B.R. 302 (Bankr. D. Del. 2012) ....................................................................................14

*In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.,*
9 F.3d 680 (8th Cir. 1993) ...............................................................................................3, 10

*Matter of Winter Haven Truss Co.,*
154 B.R. 592 (Bankr. M.D. Fla. 1993) ...................................................................................7

**STATUTES**

11 U.S.C. § 547(c)(2)(B) ..........................................................................................................3

11 U.S.C. § 502(d) ..................................................................................................................14

**RULES**

Fed. R. Civ. P. 26 ....................................................................................................................10

Fed. R. Civ. P. 37 ................................................................................................................4

Fed. R. Civ. P. 56 .........................................................................................................1, 3, 4

Fed. R. Evid. 602 ..............................................................................................................11

Fed. R. Evid. 803(17) ..........................................................................................................5

Fed. R. Evid. 1002 ............................................................................................................10

Defendant Medline Industries, Inc. ("Medline") submits this reply brief in further support of its motion for summary judgment on all claims asserted in Plaintiffs' June 25, 2021 complaint ("Complaint").

## PRELIMINARY STATEMENT

Plaintiffs' opposition is a smokescreen.  Hiding behind the many pages Plaintiffs submitted with their opposition is the fact that Plaintiffs have no evidence to counter Medline's objective ordinary course defense.  Plaintiffs could have tried to introduce evidence of an industry they thought was more apt than the one Medline came forward with.  Plaintiffs also could have tried to challenge Medline's application of its RMA Industry Range[2] to the range of Alleged Preferential Transfers.  They did not.  They also did not respond to—and therefore admitted under Federal Rule of Civil Procedure 56—Medline's proffered statements of material undisputed facts.

Plaintiffs instead threw the kitchen sink at Medline's evidence in the hope that the Court would conclude that Medline did not meet its burden.  But the Court should reject Plaintiffs' arguments for at least six reasons:

*First*, the documents Plaintiffs attach to their opposition show that Medline consistently enforced Plaintiffs' credit limit in both the pre-Preference Period and Preference Period.  This is not extraordinary.  Nor do Plaintiffs have any expert testimony that could establish that the parties' relationship was extraordinary.  Thus, Plaintiffs' argument—to which they devote almost all their energy—that Medline needed to identify industry credit terms that encompass (what Plaintiffs claim were) Medline's "extraordinary" collection efforts, fails.

---

[2]  Capitalized terms not otherwise defined herein are used according to the definitions stated in Medline's opening brief in support of this motion.  (*See* Doc 62).

**Second**, Medline was not required to come forward with evidence of anything other than general norms within its industry. Plaintiffs' argument that Medline's **objective** ordinary course defense was subject to higher scrutiny because of the parties' **subjective** dealings is based on an outdated interpretation of the law.

**Third**, Medline's RMA data is admissible under Federal Rule of Evidence 803(17) and is reliable as many courts in this district and throughout the country have confirmed.

**Fourth**, Plaintiffs' expert declarations do not challenge the accuracy of Medline's RMA data and the Court should otherwise disregard them under the Federal Rules of Evidence and Civil Procedure.

**Fifth**, the Court can consider Shane Reed's testimony. Plaintiffs' failure to depose him (or any other fact witness) is not a basis to exclude his testimony, which comes from his 16 years' experience working in the industry at issue.

**Sixth**, the Court should reject Plaintiffs' ungrounded critiques of Medline's evidence, as for example, being "very small," as such criticisms are not grounded in evidence or case law.

In sum, Medline met its burden to prove its objective ordinary course defense. Plaintiffs ignored their burden to come forward with evidence that could support a finding in their favor to show that genuine issues of material fact still exist, and that summary judgment is not appropriate. As a result, Medline is entitled to summary judgment on its objective ordinary course defense.

As for Medline's other arguments for summary judgment, Plaintiffs either address them in passing or outright ignore them. Thus, for the reasons herein, the Court should grant Medline's motion on all claims asserted in the Complaint.

<u>**ARGUMENT**</u>

**I.     MEDLINE MET ITS BURDEN; PLAINTIFFS IGNORED THEIRS.**

Under Federal Rule of Civil Procedure 56, Medline had to come forward with "sufficient proof . . . to support" its motion for summary judgment on its objective ordinary course defense under 11 U.S.C. § 547(c)(2)(B). Medline did that here. Its Director, Credit, A/R Services and Escalations, Shane Reed—who has 16 years of experience dealing with credit practices in the medical supplies industry—testified that RMA data is routinely used in the industry to determine credit terms. (Doc 65 ¶¶ 4–11); *see also In re Conex Holdings, LLC*, 518 B.R. 269, 286 (Bankr. D. Del. 2014) ("[W]itnesses who have worked in the company and in the industry may be prime candidates for providing relevant testimony . . . ."). Medline then used the RMA data from the industry relevant to this case to formulate an RMA Industry Range and then compared that range against the Alleged Preferential Transfers. *See, e.g.*, *In re AES Thames, L.L.C.*, No. 11-10334 (KJC), 2016 WL 11595116, at *8 (Bankr. D. Del. Oct. 28, 2016). Medline conducted the same analysis as to its credit practices across its other customers, (Doc 65 ¶¶ 4–11), because such evidence has also been found sufficient to support an objective ordinary course defense. *See In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.*, 9 F.3d 680, 685 (8th Cir. 1993); *In re Carled, Inc.*, 91 F.3d 811, 818 (6th Cir. 1996). Medline therefore met the "*[un]formidable*" evidentiary standard applicable to the objective ordinary course defense. *In re Am. Home Mortg. Holdings, Inc.*, 476 B.R. 124, 141 (Bankr. D. Del. 2012); *see also In re Powerwave Techs., Inc.*, No. 13-10134 (MFW), 2017 WL 1373252, at *8 (Bankr. D. Del. Apr. 13, 2017) (holding creditor has "*considerable latitude* in defining [] the relevant industry.") (emphasis added).

Since Medline properly supported its motion, Plaintiffs had to show that "genuine issues of material fact still exist, and that summary judgment is not appropriate." *Miller v. JNJ Logistics, LLC (In re Proliance Int'l, Inc.)*, 514 B.R. 426, 429 (Bankr. D. Del. 2014). This required Plaintiffs

to produce evidence on which a reasonable trier of fact could return a verdict for them—*e.g.*, evidence of terms in a different industry or an analysis of how Medline's data did not conform to the industry terms Medline identified. *Miller v. Westfield Steel, Inc. (In re Elrod Holdings Corp.)*, 426 B.R. 106, 109 (Bankr. D. Del. 2010). But Plaintiffs offer no such evidence. Plaintiffs also disregarded their burden under Federal Rule of Civil Procedure 56. Here, Medline submitted a Statement of Undisputed Material Facts with specific record support for each separate statement. Fed. R. Civ. P 56(c)(1)(A); (*see generally* Doc 63). As a result, Plaintiffs had to dispute any statement they did not want to admit with a citation to specific portions of the record that supported their claim. Fed. R. Civ. P. 56(c)(1)(A). But Plaintiffs did not comply with Rule 56's procedures. Plaintiffs instead admitted 21 of the statements and asserted, generally, they "oppose" the rest of Medline's statement. (Doc 71 at 2). Because Plaintiffs "fail[ed] to properly address [Medline's] assertion of a fact" the Court should consider all facts in Medline's Statement of Undisputed Material Facts "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *In re F-Squared Inv. Mgmt., LLC*, 633 B.R. 663, 668 (Bankr. D. Del. 2021); *Liptok v. Bank of Am.*, 773 F. App'x 97, 101 (3d Cir. 2019) (affirming grant of summary judgment where plaintiff never disputed defendant's statement of material facts); *Reddy v. Patel*, No. 2:16-CV-08256, 2023 WL 2770477, at *1 (D.N.J. Apr. 4, 2023) (holding defendant's "statement of undisputed material facts is deemed uncontested for purposes of this motion").

In sum, Medline met its unformidable burden to identify "the range of terms that encompass[] the practices in which firms similar in some general way to" Medline operate. *In re Powerwave Techs., Inc.*, No. 13-10134 (MFW), 2017 WL 1373252, at *8. Plaintiffs, in response, admitted all the facts Medline raised in support of its motion, *see* Fed. R. Civ. P. 56(e)(2); (Doc 71 at 2), and identified no evidence of another relevant industry or to challenge Medline's

application of the RMA Industry Range to the Alleged Preferential Transfers. Medline is entitled to summary judgment on its objective ordinary course defense.

## II. THE COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO DISCREDIT MEDLINE'S EVIDENCE.

As discussed, Plaintiffs do not attempt to show the existence of a genuine dispute of material fact. The Court should reject Plaintiffs' effort to poke holes in Medline's evidence for the below reasons:

### 1. Medline's RMA Data Is Admissible And Reliable.

Plaintiffs' assertion that Medline's RMA data is inadmissible is wrong. Federal Rule of Evidence 803(17) excludes from the rule against hearsay: "Market Reports and Similar Commercial Publications." The rule covers "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by ***persons in particular occupations***" like the RMA data. *Id.* This exception is based on "general reliance by the public or by a particular segment of it, and the motivation of the compiler to foster reliance by being accurate." Fed. R. Evid. 803, Note to Paragraph (17). Thus, a district court in the Southern District of New York admitted "[i]nternet printouts from the Google Play Store" under this exception because the public relies on "information from the Google Play Store" and Google knows that "if it is inaccurate, the public or the trade will cease consulting their product." *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 223 n. 11 (S.D.N.Y. 2022) (citation omitted); *see also In re Callier*, No. 22-30002, 2023 WL 6416398, at *13 (Bankr. S.D. Ga. Sept. 29, 2023) (admitting "Kelley Blue Book" to establish the average new car price and collecting cases); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. CV 11-1083 (RMB/KMW), 2017 WL 773880, at *8, n. 19 (D.N.J. Feb. 28, 2017).

Rule of Evidence 803(17) applies here for the same reasons. Shane Reed testified that RMA data is routinely used in the industry to determine credit terms. (Doc 65 ¶¶ 4–11). The

many preference cases relying upon RMA data confirm this. *See In re AES Thames, L.L.C.*, No. 11-10334 (KJC), 2016 WL 11595116, at *9 ("[O]ther courts have admitted RMA data, which is sufficient evidence that it is generally accepted."); *In re ITT Educ. Servs., Inc.*, No. 16-07207-JMC-7A, 2021 WL 933984, at *9 (Bankr. S.D. Ind. Mar. 11, 2021) ("[R]eliance on data obtained from RMA is both reasonable and appropriate for determining the relevant industry standards."); *Dietz v. Jacobs*, No. CIV. 12-1628 JNE/JJG, 2014 WL 1153502, at *4 (D. Minn. Mar. 21, 2014) (citing case calling RMA "a well-established source for credit information"). As Medline's evidence and the cases show, RMA has the same incentives as Google and Kelley Blue Book to maintain the accuracy of the information it reports. *Jackpocket, Inc.*, 645 F. Supp. 3d at 223, n. 11. Medline's RMA data is therefore admissible under Federal Rule of Evidence 803(17).

### 2. Plaintiffs Have No Evidence That Medline's Collection Efforts Were Extraordinary And There Is Nothing Extraordinary About The Consistent Enforcement Of A Credit Limit.

Plaintiffs' argument that Medline had to identify industry credit terms that encompass (what Plaintiffs claim were) Medline's "extraordinary" collection efforts fails. Although Plaintiffs go through pain staking detail in their opposition recounting the interactions between Medline and Plaintiffs, (Doc 72 at 3–15), they have no expert to testify that Medline's conduct was abnormal. In any event, all the conduct Plaintiffs scrutinize can be summarized as follows: Medline consistently enforced Plaintiffs' credit limit both before and during the Preference Period. There is nothing "extraordinary" about this. *See In re Managed Storage Int'l, Inc.*, No. 09-10368 (MWF), 2020 WL 1532390, at *7 (D. Del. Mar. 31, 2020) ("Courts have held that . . . tactics that existed consistently during both the historical and preference period can make those tactics 'ordinary.'"). For example, in *In re Archway Cookies*, 435 B.R. 234, 244–45 (Bankr. D. Del. 2010), the court rejected the plaintiff's claim that the following creditor behavior was extraordinary:

> requiring payments on past due invoices before shipment of new
> goods were made, by requiring the Debtors to pay down its
> outstanding balance during the Preference Period, by informing the
> Debtors that expedited payment would result in expedited shipment
> of goods, and by sending the Debtors a list of past due payments.

*Id.* The court reasoned that "these practices were consistent with the historical dealings between the Debtors and the Defendant." *Id.* at 245; *see also In re Elrod Holdings Corp.*, 426 B.R. at 112; *Matter of Winter Haven Truss Co.*, 154 B.R. 592, 595 (Bankr. M.D. Fla. 1993).

The same is true here. Plaintiffs first experienced a credit hold in January 2018—more than a year before the Preference Period and right after Plaintiffs acquired the hospitals. (December 29, 2023 Supplemental Declaration of Michael A. Kaplan ("Supp. Kaplan Decl.") Ex. 9 at 1). Medline increased Plaintiffs' credit limit to $2,500,000 in December 2018. (Doc 72 at 4). Yet less than a month later, Plaintiffs orders were "blocking due to the past due amounts, and because they are over the $2.5m credit limit." (Supp. Kaplan Decl. Ex. 10 at 1-2; *see also* A-74[3] ("Orders hitting blocks.")). Medline again enforced Plaintiffs' credit limit a few weeks later, on February 5, 2019. (A-095). Medline conditioned any further credit limit increases on obtaining a corporate guarantee from Plaintiffs' parent. (A-74; Doc 72 at 6). On March 14, 2019, just before the Preference Period and after obtaining the guarantee in February, Medline increased Plaintiffs' credit limit to $5,000,000. (A-126). So the credit terms here did not tighten before the Preference Period. Still, it did not take Plaintiffs long to breach their new credit limit. Thirteen days later, on March 27, 2019, prior to the Preference Period, Medline's Tom Schroeder wrote to Plaintiffs' CEO that Medline would need to "start holding orders today for both locations until we get a payment." (A-107). This pattern renders the Preference Period conduct identified in the opposition—which is no different from the above pre-Preference Period credit limit enforcement activity—"ordinary."

---

[3] "A-_" refers to the page numbers of Plaintiffs' Appendix at Doc 75.

*In re Managed Storage Int'l, Inc.*, No. 09-10368 (MWF), 2020 WL 1532390, at *7 (collecting cases). And Plaintiffs have ***no evidence***—fact or expert—to contradict this conclusion.

What is more, Plaintiffs' bald assertion that Medline's behavior during the Preference Period was unusual ignores that Medline continued to ship Plaintiffs millions in goods throughout that time. Plaintiffs provided more than $3,000,000 in New Value Invoices during the Preference Period, (Doc 66 ¶¶ 20–21), and Medline's Exhibit 7, (Doc 66-2 at 104), shows that Medline delivered thousands of dollars' worth of goods to Plaintiffs in the days before the Petition Date.[4]

In sum, the case law and record facts show that Medline was not required to identify industry credit terms that encompassed extraordinary collection efforts, because there were no such efforts here.[5]

>        3.      **No Matter What, Evidence Regarding "Collection Conduct" Is Not Relevant To The Industry Standard.**

Even if Medline and Plaintiffs' Preference Period relationship were not ordinary, Medline's RMA evidence on the terms in the medical supplies industry would still be relevant. Plaintiffs' argument that the objective ordinary course defense "requires examination of the parties' relationship and behavior in the preference period," (Doc 72 at 17), hinges on the Third Circuit's decision in *In re Molded Acoustical Products Inc.*, 18 F.3d 217, 225 (3d Cir. 1994). Plaintiffs' standard seeks to re-merge the objective ordinary course defense with the subjective

---

[4]   The Court should disregard Plaintiffs' claim that Medline's receivable was "down . . . $1.3 Million" from the start of the Preference Period. (Doc 72 at 15). That figure is based on a document reflecting receivables on ***April 8, 2019***—eight days ***after*** the Preference Period began. (*See* A-126).

[5]   Plaintiffs make much of internal communications among Medline employees. But what matters is how Medline treated Plaintiffs during that time. There is no dispute that, externally, all Medline did was consistently enforce its credit limit and continue to ship Plaintiffs' millions of dollars' worth of medical supplies.

ordinary course defense. But after the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005, proof of **either** the objective **or** subjective prong operates as a bar to preference claims. *See In re Conex Holdings*, LLC, 518 B.R. at 279. Thus, Delaware Bankruptcy Courts have held that BAPCPA overrides the *Molded Acoustical* court's reasoning on which Plaintiffs rely. For example, the court in *In re Conex Holdings* said that "under the current statute it would be inappropriate to subject the evidence of industry norms to stricter scrutiny because the parties' business relationship has been for a relatively short period of time." *Id*. at 282; (*see* Doc 72 at 17 (quoting *Molded Acoustical Prod., Inc.*, 18 F.3d at 225–227)); *see also In re Conex Holdings, LLC*, 518 B.R. at 285. Thus, contrary to Plaintiffs' arguments, (Doc 72 at 17), Delaware courts recognize that "the ordinary course of business test has changed since the Third Circuit decided *Molded Acoustical*." *In re AES Thames, L.L.C.*, No. 11-10334 (KJC), 2016 WL 11595116, at \*11–12 (citing *In re Conex Holdings*, 518 B.R. at 279)). The Court should therefore reject Plaintiffs' request to subject Medline's industry evidence (the RMA Industry Range) to a higher standard because of the parties' subjective dealings. Medline was not required, as Plaintiffs claim, to "prove rigorous definitions of either the industry or the credit standards within [its] industry." *In re Am. Home Mortg. Holdings, Inc.*, 476 B.R. at 141.

*Molded Acoustical* is also **not** a reason for this Court to reject Medline's evidence about its invoicing practices across all customers. (*See* Doc 65 ¶¶ 14–16; Doc 65-5 (DX 5)). Somewhat like Medline, the creditor in *Molded Acoustical* offered evidence that it "dealt with two other firms in the industry much like it did with the debtor." *In re Molded Acoustical Prod., Inc.*, 18 F.3d at 227. The court ultimately rejected that evidence because the two firms the creditor cited did not represent the applicable industry and were related (they shared a parent-subsidiary relationship). But the court did not say that evidence of a creditor's dealings with its other customers could never

be relevant to the objective ordinary course analysis. (*See* Doc 72 at 28). And here Medline produced evidence of its dealings with its thousands of other customers. (*See* Doc 65). So the holding in *Molded Acoustical* is not a reason to reject that evidence and the Court should grant Medline summary judgment on its objective ordinary course defense for that added reason. *See In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.*, 9 F.3d at 685; *In re Carled, Inc.*, 91 F.3d at 818.

### 4. The Court Should Reject Plaintiffs' Experts' Declarations.

The declaration of Susannah Prill should be excluded. Plaintiffs never identified Prill as an expert witness during expert discovery and Prill never issued an expert report—Plaintiffs had to produce these under Federal Rules of Civil Procedure 26(a)(2)(A) and 26(a)(2)(B). Plaintiffs have failed to explain these failures. Nor was Plaintiffs' failure to disclose Prill and her opinions harmless as Medline had inadequate time to respond to Prill's testimony in connection with this motion. As a result, Plaintiffs are not "permitted to use [Prill's testimony] as evidence at a trial, at a hearing, or **on a motion**." Fed. R. Civ. P. 37(c)(1) (emphasis added).

Prill's declaration also violates the best evidence rule. Prill bases her conclusions in Paragraphs 11 and 12 on "account history information provided by Medline" and her purported "review of the Debtors' records." (Doc 73 ¶¶ 11–12). But a witness cannot offer testimony about documents to "prove [their] content" without offering the documents themselves. Fed. R. Evid. 1002; *see also Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 222 (3d Cir. 2009) (affirming exclusion of "testimony regarding 'buy-out' clauses in contracts . . . because [appellant] did not produce the contracts at trial.")

Finally, Prill lacks personal knowledge as to many matters discussed in her declaration. For example, in paragraphs 13 and 14 of the declaration, Prill discusses email communications dating back to May 2019 and speculates about what "presumably" or "possibly" happened after

the emails.  (Doc 73 ¶¶ 13–14).  But Prill is an employee of Eisner Advisory Group, LLC—the Debtors' financial advisory and restructuring firm—not the Debtors.  (Doc 73 ¶ 1).  And Prill is neither a recipient nor sender of any of the emails attached to her declaration.  (*See* Doc 73-5, Doc 73-6).  She therefore has no personal knowledge of the matters contained in the emails and cannot testify about them.  *See* Fed. R. Evid. 602; *see Miller v. Univ. of Houston - Downtown*, No. 4:15-CV-2927, 2023 WL 6465858, at *2 (S.D. Tex. Oct. 4, 2023) ("[A]n individual does not have personal knowledge of an event if the person acquired that knowledge from another document or source rather than from the individual's personal perception.").

The Court should disregard William Pederson's declaration for similar reasons.  To begin, that declaration adds nothing.  Pederson spends most of his ten-page statement on his conclusion that Medline relied on (what he calls) RMA input data rather than industry data.  Pederson claims, without any foundation, that the RMA data "was not delivered by a team of industry practitioners." (Doc 74 ¶ 9).  This is pure speculation and not accurate.  But even if that were true, Pederson fails to explain the significance of his conclusion and does not challenge Toppi's application of the RMA Industry Range against the parties' Preference Period payment history reflected in Medline's Exhibit 7.  (Doc 66-2).

The Court should also disregard Pederson's declaration because it expresses opinions not disclosed in his report and which contradict his prior testimony.  As discussed above, the Court can disregard expert opinions not previously disclosed under Federal Rule of Civil Procedure 26(a)(2)(B) and 37(c)(1).  Much different from his expert report, Pederson's declaration now focuses on RMA's data aggregation practices.  But Pederson never disclosed the foundation for his expertise in such matters (he has none) and did not go into any of the detail about the RMA data that is now found in his declaration.  (*See* Supp. Kaplan Decl. Ex. 11 (relevant portions of

Pederson's rebuttal report)).  Pederson also did not dispute the relevance of the data he now critiques:

> Q. So this refers to NAIC code 424359, right?
>
> A. Yes.  That's the code he used.
>
> Q. Is it your opinion that, that data doesn't apply in this case?
>
> A. ***No.  I didn't say the data didn't apply.***  But there is a disconnect between the data[] [a]nd what is in his report.

(Supp. Kaplan Decl. Ex. 12 at Tr. 113:10-114:4; (emphasis added); *see also id.* at Tr. 114:24-115:15 (admitting twice that the parties' relationship "moved towards the industry standard during the preference period.").  The Court should disregard Pederson's backtracking.

### 5. Shane Reed Can Testify About Medline's Credit Practices With Its Other Customers.

Plaintiffs never deposed Shane Reed or any other fact witness.  They therefore cannot complain that Reed offered testimony that they were not prepared for.  Based on Mr. Reed's credentials described above, he is competent to testify about Medline's accounts receivables practices, among other things.  (*Id.* ¶ 14); *see also In re Conex Holdings, LLC*, 518 B.R. at 286 ("[W]itnesses who have worked in the company and in the industry may be prime candidates for providing relevant testimony.")  The chart on page 3 of his declaration was included as a demonstrative, summary chart under Federal Rule of Evidence 1006.  Medline has complied with that rule in offering Reed's testimony and the chart.  (*Id.* at 3, n. 2.)  There is no basis to exclude Reed's testimony that the Alleged Preferential Transfers were paid on terms consistent with 92.32% of all Medline customers.  (Doc 65 ¶¶ 15–16).

**6.      The Court Should Reject Plaintiffs' Bald Critiques Of Medline's Evidence.**

Without any real evidence to counter Medline's objective ordinary course defense, Plaintiffs' brief devolves into a series of unsupported critiques. The Court should reject these arguments because "mere allegations" are not enough at summary judgment. *In re Proliance Int'l, Inc.*, 514 B.R. at 429.

For example, Plaintiffs' attempt to distinguish this case from *AES Thames* is meritless. *AES Thames* did not, as Plaintiffs argue, establish a specific number of industries an expert must consider or a specific methodology that an expert must follow for the objective defense. Consistent with the unformidable objective standard, the *AES Thames* court held, as did the many cases it cited, that RMA data is "sufficient evidence" that is "generally accepted" to establish the objective ordinary course defense. *In re AES Thames, L.L.C.*, No. 11-10334 (KJC), 2016 WL 11595116, at *9.[6] Here, Medline has offered such evidence, supported by expert analysis, in support of its motion.

The Court should likewise disregard Plaintiffs' other baseless critiques about Medline's approach. For example, Plaintiffs claim Medline's data points are "very small." They cite no case or evidence for this proposition. Plaintiffs' unfounded critiques, without evidence, are not enough to sustain Plaintiffs' burden at summary judgment. *In re Proliance Int'l, Inc.*, 514 B.R. at 429.

---

[6]   Plaintiffs raise RMA's disclaimer language. (Doc 72 at 27). The *AES Thames* court rejected this exact argument. *In re AES Thames, L.L.C.*, No. 11-10334 (KJC), 2016 WL 11595116, at *8–9. This Court should too.

## III. PLAINTIFFS DO NOT CONTEST MEDLINE'S OTHER ARGUMENTS FOR SUMMARY JUDGMENT.

### A. Plaintiffs Do Not Raise A Genuine Dispute Over Medline's New Value Defense.

Plaintiffs spent half a page on Medline's new value defense. In doing so, they did not dispute that Medline's preference exposure goes to $0 if Medline's objective ordinary course defense succeeds and is combined with Medline's new value. (Doc 72 at 30). Plaintiffs also appear to concede that Medline's new value defense amounts to at least $3,000,000. (*Id*.) "A party 'concedes through silence' arguments made by its opponent that it fails to address." *In re Mallinckrodt PLC*, No. 20-12522 (JTD), 2021 WL 2460227, at *4 (Bankr. D. Del. June 16, 2021); *Pope v. Swanson*, No. CA 07-652-GMS, 2009 WL 2507928, at *2 (D. Del. Aug. 17, 2009) (failure to address arguments demonstrated that they were conceded); *see also In re Sierra Concrete Design, Inc.,* 463 B.R. 302, 307 (Bankr. D. Del. 2012) (granting summary judgment on new value defense based on analysis similar to that provided in Medline's DX 7). Accordingly, Medline is entitled to summary judgment on its new value defense.

### B. Plaintiffs Do Not Address Medline's Motion For Summary Judgment On Plaintiffs' Constructive Fraudulent Transfer Claim.

Plaintiffs have not substantively responded to Medline's argument that Plaintiffs' constructive fraudulent transfer claim failed at the second necessary element—lack of reasonably equivalent value—because Plaintiffs allege (and do not otherwise raise facts to dispute) that "*all* of*" the Alleged Preferential Transfers "were on account of *antecedent obligations*." (DX 1 at ¶ 32 (emphasis added)). *In re Parker Sch. Uniforms, LLC*, No. 18-10085 (CSS), 2021 WL 4553016, at *7 (Bankr. D. Del. Oct. 5, 2021). Medline is therefore entitled to summary judgment on Plaintiffs Second Claim for Relief. *In re Mallinckrodt PLC*, No. 20-12522 (JTD), 2021 WL 2460227, at *4; *Pope*, No. CA 07-652-GMS, 2009 WL 2507928, at *2.

**C.  Medline Is Entitled To Summary Judgment On Plaintiffs' Third And Fourth Claims For Relief.**

In response to Medline's Motion on Plaintiffs Third Claim for Relief, Plaintiffs wrote, in a footnote, that "if, in fact, Medline has no claims of any sort then Count III could be dismissed . . . ." (Doc 72 at 3, n. 5).  Plaintiffs do not raise any facts to dispute Medline's assertion that it has no claims in connection with the above-captioned bankruptcy.  (SUMF ¶ 10).  So Medline is entitled to summary judgment on Plaintiffs' 11 U.S.C. § 502(d) claim.

As for Plaintiffs' Fourth Claim for Relief, Plaintiffs concede that the claim rises and falls with claims one and two.  (Doc 72 at 3, n. 5).  And because Medline is entitled to summary judgment on those claims, Medline is also entitled to summary judgment on Plaintiffs' Fourth Claim for Relief.  *In re CL H Winddown LLC*, No. 21-10527 (JTD), 2023 WL 5740195, at *3–4 (Bankr. D. Del. Sept. 5, 2023).

## <u>CONCLUSION</u>

For all these reasons Medline is entitled to summary judgment on the claims asserted in Plaintiffs' Complaint.


Dated:  Wilmington, Delaware
        December 29, 2023

                                        Respectfully submitted,

                                        **THE ROSNER LAW GROUP LLC**

                                        By: */s/ Zhao Liu*
                                            Frederick B. Rosner (DE 3995)
                                            Zhao (Ruby) Liu (DE 6436)
                                            824 Market Street, Suite 810
                                            Wilmington, DE 19801
                                            Tel.: (302) 777-1111
                                            Email: rosner@teamrosner.com
                                                   liu@teamrosner.com

                                            -and-

**LOWENSTEIN SANDLER LLP**

By: /s/ *Robert M. Hirsh*

Robert M. Hirsh, Esq.
Bruce S. Nathan, Esq.
Phillip Khezri, Esq.
1251 Avenue of the Americas
17th Floor
New York, New York 10020
Telephone: (212) 262-6700
Facsimile:  (212) 262-7402
Email:   rhirsh@lowenstein.com
            bnathan@lowenstein.com
            pkhezri@lowenstein.com

-and-

Michael A. Kaplan, Esq.
C. Patrick Thomas, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
Email:   mkaplan@lowenstein.com

*Attorneys for Defendant*